## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST      )
FROM ARGENTINA             )
IN THE MATTER OF          )     Misc. No. 07-
SUPERCANAL HOLDING S.A.     )

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Argentina. A copy of the translation is attached.

FACTUAL BACKGROUND:

Litigation is being conducted before the Eighth Chamber of the Court of Appeal "C" of Buenos Aires, Argentina. The litigation relates to fiscal matters.

EVIDENCE SOUGHT:

The Argentine authorities seek information from a company that resides in this District and the Delaware Secretary of State's Office. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court.   By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in _In Re Request for Judicial Assistance from the Seoul District Criminal Court_, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." _In Re Letter of Request from the Crown Prosecution Services of the United Kingdom_, 870 F.2d 686, 687 (D.C. Cir. 1989). The letter of request in this case shows that the information sought is for use in such proceedings in Argentina and hence the request comes well within those circumstances

contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 11/13/07



**AN APPEAL IS FILED.** ------------------------------------------------

(All folios are numbered, from 21 to 35, to the upper right angle on the obverse only).

To the Hon. National Treasury Court: -------------------------------------

I, the undersigned, Dr Carlos-Hernan Morales, in my capacity as attorney-in-fact for Supercanal Holding S.A with a registered domicile on (*Again, this, and all further addresses are written Argentine style, T's N.*) Reconquista 672, piso 10, city of Buenos Aires. In this connection, I hereby appear and respectfully express as follows:

------------------------------------------------------------------------

**I. SUPERCANAL HOLDING S.A. LEGAL STATUS.** Pursuant to a copy of the accompanied power of attorney that, I attest under oath, is in force, I am the attorney-in-fact for a company running under the firm name of Supercanal Holding S.A., taxpayer registration number is ███████████ with a registered address on Avenida Paseo Colon 505, piso 2, city of Buenos Aires. ------------------------

------------------------------------------------------------------------

**II. OBJECTIVE:** Within the legal period in force I hereby file an appeal foreseen in Subsection (b) of Section 76 of (*Argentine*) Act # 11683 (the text of which has been put in order in 1998), against Regulation # 19/05 (DV RRME) dated April 28, 2005 that has been notified on May 5. ------------------------------------------

By means of said regulation, an amount of the assumed minimum income tax relevant to fiscal year 2000 has been ex officio determined to the amount of Argentine pesos nine hundred ninety-eight thousand five hundred seventy-seven with ninety-eight cents ($ 998,577.98) plus their compensable interests. ----------------------

In this connection we invoke the right to file a criminal action as well as the possible filing of the first part of a preliminary investigation so that criminal penalties are applied pursuant to (*Argentine*) Act # 11683. ----------------------------------

In virtue of the reasons that are going to be discussed hereinunder, I request that the aforesaid, appealed Regulation be dismissed and filed in the archives, and I request that the Argentine National Treasury shall pay their own costs, on the basis of the reasons of justice and equity that shall be stated hereunder. ------------------------

------------------------------------------------------------------------

**III. FACTS AT STAKE.** The facts that have originated this presentation are as follows: ---------------------------------------------------------





1. Supercanal Holding S.A. is a company that has been created to acquiring broadcasting companies located in the Argentine Republic so that a group of companies operating TV channels (cable TV) is constituted in different areas of the Argentine Republic. ------------------------------------------------------------------------

2. In the framework of such activity, Supercanal Holding S.A. has purchased a group of companies operating cable TV channels in several Argentine Provinces pertaining to the Patagonian area. In order for this adquisition to be carried out, Supercanal Holding S.A. has negotiated with the seller of such companies the purchase of those operating societies –i.e. cable TV companies, together with their respective investor companies. Those investor companies have been created and organized in the United States of America. ------------------------------------------------------------------------

3. The above mentioned acquisition has taken place in year 1998 through the purchase of the block of shares pertaining to Tescorp, Inc., a company located in the State of Delaware, of the United State of America. ------------------------------------

4. Inasmuch as Tescorp, Inc. was a company quoted on the Stock Exchange of the United States of America, the purchase of their shares had to be performed through another American company so that the American law related to the purchase of companies quoted on the American Stock Exchange be complied with.----------------

5. This is why Supercanal Holding S.A. created and organized Tescorp Acquision in the State of Texas, of the United State of America. ----------------------------------

6. Thus, to be in a position to acquiring the cable TV companies located in the Patagonian area of the Argentine Republic, Supercanal Holding S.A. was forced: a) at the request of the American seller, and: b) to comply with the American law, to buy the Argentine companies through two companies created and organized in the USA, namely: Tescorp Acquisition that, in turn, bought the shares pertaining to Tescorp, Inc., which, in turn, is a shareholder of Argentine companies through another company located in the United States of America. ----------------------------------

7. This acquisition of shares has been registered pursuant to good accountancy practices –i.e. the value of shares plus their goodwill value based on the number of subscribers to each Argentine cable TV companies. ---------------------------------

8. Thereafter, by means of an "inverted" merger permitted by the American law, Tescorp, Inc. absorbed Tescorp Acquisition. -----------------------------------------




9. Finally, the chain of shareholders included Tescorp, Inc (that had absorbed Tescorp Acquisition), Austral Communications Corp., Comunicaciones Australes S.A. (An Argentine company – *as previously noted, S.A. is the Spanish acronym for "sociedad anónima" a type of company quite similar to the American "Co., Inc." type of business. T's N.*), and, finally, Supercanal S.A. --------------------------------------------

10 Hence, due to the fact that Supercanal Holding S.A. is the owner of companies located in the Argentine Republic, Supercanal Holding S.A. has considered that the investments performed in those companies through SHSA's participation in Tescorp, Inc. were exempted from the assumed, minimum income tax, in view of Section 3, Subsection "e" of (*Argentine*) Tax Law. ------------------------------------------

11. Such interpretation, however, has not been accepted by the Argentine Treasury: after a checking-up process had been performed by the Argentine Treasury, they decided to question the exemption of the company participations we have just submitted –so, the Argentine Treasury proceeded to rectify the tax return that, later on, was rejected by my principal. Consequently, the Argentine Treasury Collecting Office started the ex officio determination procedure, serving notice of the above mentioned complaint. ------------------------------------

12.On April 23, 2003, in opposition thereof, Supercanal Holding S.A. has introduced an explanation, offering proofs so that their tax return was considered to be truthful, at the same time that SHSA required that the proceedings at the investigatory stage of the trial be filed in the archives. ----------------------------------------------

13. On August 5, 22-3, Supercanal Holding S.A. increased their defense with regard to aspects related to the complementary application of the income tax law, and norms thereof devised so that double taxation be avoided. --------------------------------

14. Finally, on April 28, 2005, the Administrative Judge issued Ruling 19/05 wherein said Judge rejected both arguments put forward as well as the proof submitted by Supercanal Holding S.A. in their answer to the charge, determinating a difference to the assumed, minimum income tax, in favor of the Argentine Treasury of about one million pesos. Taking, however, into account, that the determined amount exceeds the objective punishability foreseen in Section 1 of Argentine Act # 24769, the Administrative Judge decided to invoke the right to file a summary proceeding so that fines established in the Argentine Tax Law be applied. ------------------------------

7




15. The present motion for appeal is thus submitted against the above mentioned ruling, so we apply for Your Honor to void that ruling, hence the Argentine Treasury shall bear their own costs, due to the reasons of justice that are submitted hereinunder. -------------------------------------------------------------------

-----------------------------------------------------------------------------------------

**IV. LEGAL ASPECTS.** To perform a concrete, well-reasoned critique to the administrative action we are refuting herewith, we are going to split the foundations of this motion into the following chapters.----------------------------------------------

-----------------------------------------------------------------------------------------

**1. Tax exemption on share custody.** In the first place it should be noted that there were no controverted facts in the subject matter hereof. Indeed, in page 9 of the appealed ruling, it is said that / quote *"... the facts that the responsible party tries to demonstrate through the offered evidence, are not discussed herewith inasmuch as these are judicial facts and situations that are considered to be true, not being applicable to solve the controversy set out in these proceedings"* /unquote (our underlined text). That is to say that the facts described in the previous Chapter dealing with both the direct and indirect participations Supercanal Holding S.A. has had into Argentine companies, are not to be discussed. --------------------------------------------------

The point which keeps being controversial –and which gives us a basis to impugn said ex officio ruling, is the judicial treatment thereof, in the light of the interpretative principle of the economic reality, and my principal being a shareholder of foreign companies. -------------------------------------------------------------------------------

As regards this point, the Administrative Judge considered that / quote *"... as regards the legal rule set up in Section 2 of Argentine Act #11683 and amendments thereof – in that sense that "having to resort to actions, situations, and economic relationships that, actually, tax payers either perform or establish" a fact that constitutes the principle of "economic reality", it should be noted that this is a tool legislation offers in cases wherein taxpayers "submit those actions, situations or relationships to judicial ways or judicial structures that, manifestly, differ from the ways or structures the private law either offers or authorizes so that paxpayers' economic, effective intention is configurated adequately". Legislation supposes that a taxpayer, either wishing to elude the payment of taxes or avoiding the creation of any fact likely to be submitted to tax payment, shall conceal determined facts or situations under a*

8




*different judicial "disguise". It should also be noted that either the seller's requirement, and / or the American legislation requirement in that sense that the Tescorp Acquisition company be constituted, so that the group of cable TV companies located in different Provinces within the Patagonian area could be purchased, cannot be used to justify any withdrawal from the law".* --------------------------------------------------

Thereafter, the impugned regulation stated that / quote: *"insofar as the legal basis foreseen in the aforesaid Section 2 is lacking, the possible consequence thereof – i.e.withdrawing from the judicial ways is not in agreement with the law. Of course, if the aforesaid rule is unlikely to be applied conversely –that is, in favor of the taxpayer, this is not due to the fact that this is impossible, instead it is due to the fact that this present case does not apply because two conditions are lacking, namely: attempting at eluding taxes or committing tax evasion on the one hand, or resorting to inadequate juridicial procedures on the other hand. Needless to say that –due to either the application of the own acts doctrine, or an application derived from the principle that forbids any person to claim one own's ineptitude, it is unreasonable that a taxpayer who has arranged businesses in a way he considered to be appropriate, pursuant to the private law in force in the country a given company is located, it is unreasonable indeed that the said taxpayer wishes to be awarded here a totally opposite tax-related treatment that would be much more favorable to his economic interests" / unquote.* --------------------------------------------------------------

May I clarify that the aforesaid conclusions are unreasonable, arbitrary and detrimental to my principal's property rights, as I will explain now. It is necessary to explain both the reach and the applicability of the methods aimed at interpreting economic reality, as worded in Section 1 and Section 2 of Argentine Act # 11683.- ---

1.1. An interpretation of judicial norms pursuant to a criterion based on economic reality.---------------------------------------------------------------------

The above mentioned Section 1 starts stating that / quote: *"When interpreting the legal requirements of either this Act* (i.e. the aforesaid Act # 11683, T's N.) *or other tax-related* (Argentine) *Acts, the interpretation thereof shall be aiming at the purpose of these Acts, and their economic meaning..."* / unquote. In turn, the above mentioned Section 2 states / quote *"...To determine the true nature of any fact likely to be subject to taxation: actions, situations, and economic relationships that have been either carried on, pursued or established by taxpayers shall be considered. Whenever*



*taxpayers subject either actions, situations or relationships to any judicial ways or judicial structures differing manifestly from the ways or structures the* (Argentine) *private law either offers or authorizes –so that the actual economic and effective intention of taxpayers involved in such a case, the inadequate judicial ways and structures shall not be taken into account when it comes to considering the fact at stake likely to be subject to taxation. The actual* (taxpayer's) *economic situation shall be considered as classified within either the ways or structures the private law is entitled to apply –independently from the ways or structures a given taxpayer might have chosen, or within the ways or structures that* (the private law) *considers to be most adequate to a taxpayer's actual intention"* / unquote. ————————————

Both sections are fully applicable to the subject matter hereof. Section 1 deals with the interpretation of some (*Argentine*) Acts –such as, for example (*Argentine*) Act # 25063 that established the tax we are dealing with right now. This standpoint must be resorted to in this case inasmuch as norms regulating the taxation at stake must be interpreted pursuant to the criterion thereof.—————————————————

In that sense –even though exemptions such as the exemption invoked by my principal (Section 3, Subsection "e" of the mentioned Act) should be, in principle, interpreted stricto sensu, it is not possible to elude neither the facts these exemptions are aiming at nor their economic signification, as it has been established in Section I. In opposition to the arguments put forward by the National Argentine Treasury , we are not trying to make the law go further than it has been established: we wish to interpreting the law so that the real reach of which is delimitated properly. In the subject matter hereof –as we shall consider later on, the economic reality of Supercanal Holding in their capacity as shareholders, coupled to the purpose of exempting the company participation from the assumed minimum income tax, in this connection it can only be concluded that the exemption considered in the aforesaid Subsection "e" of Section 3 of the mentioned Act, is fully appliable to the assets the Administrative Judge considers to be subject to taxation. ———————————

Moreover, when it comes to intepreting the exemption we are dealing with, it should be noted that the criterion we have submitted up to now, is also supported by a complementary application of the income tax law. ———————————————

Indeed, even though the income tax norms on assumed, minimum profit do not include exceptions to the fact that (*a taxpayer is likely to be*) either a shareholder or a



participating member in foreign companies, this situation is unlikely to allow us to construe that –in cases wherein (through such participations) a taxpayer invests in companies subject to tax paying, we are facing, so to speak, a taxed asset, inasmuch as the tax application is not limited to either the legal text or the regulatory order thereof.--------------------------------------------------------------------------

In this sense, we do state that a correct application of the assumed, minimum Income Tax Act requires us not to get limited to the text thereof: instead we have to include, on the basis of a legal reference, all the statutory clauses of both the Income Tax Law and the regulatory order thereof to solve situations that have not been contemplated in either the text of the Income Tax Law or said regulatory order. Indeed, Section 18 of the Income Tax Law states textually / quote *"With regard to cases that have not been foreseen in the previous Sections as well as the regulatory order thereof, the (former) Income Tax Law dated 1997* (i.e. instead of the Income Tax Law currently in force, dated 1998, T's N.) *section shall be applied as a complement"* / unquote.----------------

As regards the so-called phenomenon of double taxation, the Income Tax Law has lawfully included definite specifications so that the effect not sought by legislation is avoided –that is, for example, specific situations wherein said mechanism could be resorted to. So, Section XIII, Subsection 1 that has been added to Section 165 of the Income Tax Law Regulatory Order, states expressly / quote: " (Let us consider the case of) *residents in Argentina who own shares issued by companies located abroad* (and such companies) *either indirectly or through another company located abroad, participate in a company created and organized in Argentina. (Such residents) shall consider that any dividends distributed by the issuing company are not subject to taxation, provided that the aforesaid dividends are included in incomes distributed by the Argentine company inasmuch as those dividends have been subject to taxation pursuant to either the Section 69 of Income Tax Law or the Section that has been added to said Section. Hence, a shareholder residing in Argentina shall have to state –pursuant to forms, terms and conditions stipulated by AFIP in their capacity as an agency pertaining to the Argentine Treasury Department, how dividends collected are integrated in the company profit as referred to in a former paragraph. The procedure set up in this Section shall only be applied whenever the foreign issuing company is not domiciled in any venue classified as a location subject to either a low taxation or no taxation at all".*-------------------------------------------------------




In other words, dividends payed by an "A" Company, located in Argentina, to a "B" Company organized abroad that, in turn, distribute their dividends to another "C" Company domiciled in Argentina, such dividends shall be treated in the same way than dividends paid by a "Y" Company, organized in Argentina, to a "Z" company, also organized in Argentina, that was a direct shareholder to the "Y" Company. Thus, such dividends shall be considered to be taxed, hence unable to be computed pursuant to Section 46 and related sections of the Income Tax Law. ------------------------------

To be granted this procedure a company has to comply with the following requirements: (i) profits distributed by the foreign-located "B" Company to the "A" Company are included into the dividends of the Argentina-located "C" Company; (ii) the Argentina-located "C" Company has duly paid their Income Tax; (iii) the foreign-located "B" company is not located at a so-called tax haven, and (iv) those alleged facts are demonstrated. ------------------------------------------------------------

A complementary application of the Income Tax norms is by no means arbitrary. Instead it represents the lawmaker's intention to, precisely, complete the Income Tax with the Assumed Minimum Income Tax so that both taxes work as a unified instrument over citizens' taxative capacity. This is why the taxable basis of the Assumed, Minimum Income Tax is represented by the asset value pertaining to passive tax subjects –that is, such basis works as a reference to collect monies on account of the Income Tax, pursuant to the system set up in Section 13 of the (*Argentine*) Act on Assumed, Minimum Income Tax. ------------------------------

Consequently, inasmuch as the norms pertaining to the Income Tax complete the norms pertaining to the Assumed, Minimum Income Tax law –and taking into account the regulations thereof, it should be understood that, if an "A" Company, located in Argentina, is a shareholder of a "B" Company created y organized abroad which, in turn, is the holder of another company, the "C" Company located in Argentina, the block of shares pertaining to the "A" Company in the "B" company must be excluded from the tax base so that the effect of a double taxation is avoided. Any differing interpretation from the explanation herewith –that is, any regulation likely to tax this type of participation without taking into account both the technical inter-relation, and the complementary type of said taxes, any differing interpretation would imply the consecration, so to speak, of an unexplainable assymetry insofar as, on the one hand, the dividends corresponding to said participation would be excluded

12





from the Income Tax base because they have already been submitted to the Argentine taxation system, but, on the other hand, it would seem that the Treasury thinks to apply the Assumed, Minimum Income Tax law to shares pertaining to Argentine companies that have already paid their corresponding taxes... --------------

Such a situation is, precisely, the situation Supercanal Holding S.A. is facing: a company created and organized under the Argentine law, is the holder of ninety-nine percent of the shares of Tescorp, Inc., a company created and organized under the US law. We understand that it is obviously impossible to pretend that the USA could be included in the listing of "countries with the lesser possible tax base or no tax base at all" as it can be read in the list appearing in Section 21 of the implementing regulation decree of the (Argentine) Income Tax Law... ---------------------------------------------

Now, Tescorp, Inc. is a shareholder of Supercanal Holding S.A., a company created and organized under the Argentine law that has complied with their tax obligations, and paid their dues under the Assumed, Minimum Income Tax régime for year two thousand. --------------------------------------------------------------------------

So, if the dividends that Supercanal Holding S.A is supposed to pay Tescorp, Inc. do not create Income Tax payment obligation for Supercanal Holding S.A., the shares pertaining to the above mentioned "chain of companies" are not supposed to cause the Assumed, Minimum Income Tax to be applied. ------------------------------------

In other words, all and every regulations forbidding the double taxation on the profits earned by companies, have to be also applied to compute the tax on assumed profit/loss. In other words, we understand that the abovementioned shares must be exempted of any taxation.--------------------------------------------------------------

1.2. An interpretation of the financial operation at stake in the light of the economic reality. Besides an interpretation of the judicial norms applicable to the subject matter thereof, it is our contention that a criterion based on economic reality should be resorted to so that the actual meaning of the operation determined herewith be clarified. -----------------------------------------------------------------------

Thus, it seems interesting to have Section 2 of (Argentine) Act # 11683 applied. When we revert to that Section, we are in a position to conclude that the (Argentine) National Teasury criterion as ut supra quoted is unapplicable if, not only the economic actuality is taken into account but also there already exists an operation freely chosen by the taxpayer involved.--------------------------------------------





Indeed, the Supreme Court of Argentina has actively defended the symmetrical aplication of the economic reality principle (that is, in favor of either the National Treasury or the taxpayer involved). Thus, in the final decision issued by the SCA on February 26, 1985, in the Kellog Co. Argentina S.A[1]. case, the SCA had an opportunity to take a decision with respect to the reach of the economic reality principle on the basis of an international economic group, invoked by the taxpayer and accepted by the (*Argentine*) National Treasury (such as it was accepted in our present case).----------------------------------------------------------------

The SCA pointed out the usefulness of hermeneutics when dealing with legal principles through the economic reality principle (Section 1 and Section 2 of [Argentine] Act # 11683, 1998) –in that sense, the SCA stated / quote "*...rules that are likely to functioning in an unilateral way –that is, favoring exclusively one of the subjects involved in a taxation relationship, have not to be accepted*" (...) "*Courts can disclose the trade secrecy, in the best interest of the persons that had created such secrecy, by applying positively the theory of economic penetration and, at the same time courts may accept that the economic group theory, or equivalents thereof are invoked because, what is at stake is the necessary prevalence of the legal reasoning as opposed to the formal, judicial ritualism that substitutes for the substance that defines Justice, instead of supporting the objective, judicial truth, no matter the truth favors either the Treasury or the taxpayer*"/ unquote (text pertaining to the recital # 12 of quoted final decision). ----------------------------------------

The abovementioned criterion is also been supported by Asorey[2], and Corty[3] when writing comments on the quoted Kellog case.--------------------------------------------

In that same sense, both Rechter and Gonzalez de Recher[4] have stated that / quote: "Judicial doctrine, as presented herewith, is a full demonstration that the jurisprudence of our highest Court of Justice has accepted now what we could call a

---

[1] Published in La Ley (lit. The Law, a collection of Argentine courts' sentences and final decisions), Buenos Aires, Vol. 1985-B, page 414.

[2] La doctrina 'Parke Davis' no ha sido restablecida (*The so-called 'Parke-Davis' doctrine has not been reinstated*) published in La Ley, Vol. 1985, page 982.-------------------------------------

[3] La teoria de la penetracion en la forma de la persona colectiva y su vigencia en el derecho tributario argentino (*The penetration theory when embodied by a collective person, and the legal effect of which in the Argentine Tax Law*), published in La Ley, Vol. XLII, page 80.-------------------------------

[4] Rechter, I., Gonzalez de Rechter, B. "Los alcances del principio de la realidad economica" (*The reach of the economic reality principle*), In Homenaje al 50° aniversario de El Hecho Imponible, de Dino Jarach" (*An homage to the 50th anniversary of D. Jarach's 'Taxable Facts'*) Buenos Aires, Interoceanicas, 1994, page 136.-------------------------------------





symmetric application of the economic reality principle. We say symmetric in that sense that this principle is applied in favor as well as against a taxpayer that has invoked this principle, and this principle is likely to be applied also whenever the Tax Law deals with the existence of such relationships among taxpayers" / unquote. ------

Finally, it would be useful to take into account that it is mandarory, for any Administrative Judge, to resort to this method inasmuch as Argentina' s Supreme Court understands that /quote "...*It is the mission of the person in charge of construing the actual meaning and reach of the law through a careful, and in-depth examination of terms thereof, to check up both the actuality of the precept as well as the will of the lawmaker. Whatever be the scope of any given regulation, there is no better way to construing it than checking up the aim of that regulation*" / unquote. (Quoted, among others, in final decisions #308# and #215# among others). ----------

Consequently both the doctrine and jurisprudence we have just quoted allow us to conclude that the economic reality is a principle that can be applicable even to the hermeneutics of a judicial situation in favor of Supercanal Holding S.A. ---------------

As it has been said in the Chapter on facts, Supercanal Holding S.A. has been using this structure –however, not because they consider that it was the most adequate (... or inadequate) structure for their trade, but because it had been a condition imposed by the seller so that the cable TV organization be spread all over the Patagonia-located Provinces. In other words, the seller was not only interested in giving away the Argentine companies but also the respective investors located in the USA. --------

So, it cannot be stated that my principal had been clumsy when the business at stake had been carried out pursuant to the only possible way. ------------------------------

At the same time, this aspect coincides with the Treasury's criterion as regards the fact that the adopted judicial structure was neither inadequate nor aimed at eluding any taxpaying –this, however does not mean that, if an adequate judicial structure is adopted we must not resort to the economic reality criterion to both construing and checking-up the fact that Supercanal Holding S.A. owns indeed shares of Argentine companies thus, their Tescorp, Inc. shares are exempted from taxation. ----------------

In other words, there is no controversy in the fact that Supercanal Holding S.A. owns indirectly (through Tescorp, Inc.) cable TV systems in Argentina. If Tescorp, Inc. did not exist, Supercanal Holding S.A. would be the direct shareholder of companies, created and organized under the laws of Argentina, operating those cable TV




channels. In fact, inasmuch as Supercanal Holding S.A. is the indirect principal of the above mentioned cable TV companies, Supercanal Holding S.A. owns Tescorp, Inc.'s whole capital while, in turn, Tescorp, Inc. owns the whole capital of the above mentioned cable TV companies. ------------------------------------------------------------------

This means that Supercanal Holding S.A. exerts both an economic and judicial control onto the Argentine companies, and such a control justifies the fact that the participation of my principal in Tescorp Inc. be considered as a participation in Argentine companies (i.e. Tescorp, Inc.' sole asset) –hence, such participation must keep exempted from the Assumed, Minimum Income Tax, pursuant to Sector 3, Subsection "e" of the Argentine Law. ------------------------------------------------------------

Moreover, the CEOs of all the companies are the same persons, that is, physical persons residing in Argentina. Thus, the judicial control of the companies located abroad coupled to the fact that those companies are 'look through entities", explain the economic reality of such a judicial situation. This criterion is important for the situation at stake because it is used conversely by the Argentine Treasury to determine the relationships among the related companies and the transfer prices. That is to say that, should the Argentine Treasury consider (with reference to other taxes) the Argentine taxpayer as a linked company, conversely the Argentine Treasury must consider Tescorp Inc., and Austral Communications Corp. as the links of a chain of shareholders in Argentine companies. ----------------------------------------------------------

This is the economic reality of the judicial situation the Argentine Treasury is aware of, a situation confirmed by my principal through the evidence that is submitted in the respective chapter. Another interpretation of the question at stake, such as the interpretation subject to appeal herewith not only omits the application of Section 1 and Section 2 of (*Argentine*) Act # 11683 (1998) that, as stated before, the Argentine Treasury is forced to apply in a symmetric way, but also generates a double taxation situation to the economic group my principal rules over. ----------------------------------

Indeed, should the Argentine Treasury want to apply the Assumed, Minimum Income Tax to the shares Supercanal Holding S.A. holds in Tescorp, Inc. and, at the same time, the Argentine Treasury want to apply the same tax to the assets of the Argentine companies the direct shareholder of which is Tescorp, Inc and, as an indirect shareholder, my principal, it can be said that a same tax is applied twice on the same asset –that is, the properties belonging to cable TV companies operating in Argentina.





This double taxation –even though it does not affect the same judicial subject, affects the economic group within the frame of reference of the economic reality: in other words, the double taxation violates the right of property of Supercanal Holding S.A. in particular, and the right of property of the economic group in general. ----------------

This is why Your Honor is respectfully requested to revoke the ex officio determination that has been subject to appeal, while the tax return is confirmed regarding the Assumed, Minimum Income Tax for fiscal year two thousand, submitted by my principal in good and proper time and form, so that the shares that have been declared be exempted, pursuant to Section 3, Subsection "e" of the Assumed, Minimum Income Tax Law, with costs to the Argentine National Treasury.

------------------------------------------------------------------------------------------------

**2. Inapplicability –and unconstitutionality, of the Assumed, Minimum Income tax when dealing with proceedings prior to the adjudication of bankruptcy.** ------

*(This is an aspect when the US law and the Argentine law differ. In Argentina, before an act of bankruptcy is ruled, there exists a legal period during which a debtor proposes a reorganizing payment plan to his creditors to avoid being adjudged a bankruptcy, T's. N.)* ------------------------------------------------------------------

The rule which is hereby under appeal rejects my principal's arguments as regards the inapplicability of the Income Tax to a company that, manifestly, lacks taxpaying capacity in connection with generating profits, insofar as the Assumed, Minimum Income Tax is an autonomous tax on assets. From such statement, the Administrative Judge states that / quote "... *either the effective generation of profits or the existence of losses is irrelevant in view of the plaintiff being in a position to own assets likely to produce profits"*/ unquote, and the Administrative Judge supports his standpoint by quoting a final decision issued by the National Treasury Court. ------------------------

Finally, the A.J. completes his argument stating that it is impossible for any Administrasion agency to declare that a given legal norm is unconstitutional. ---------

In the first place, it should be noted that there is no controversy whatsoever in the fact that, on March 29, 2000 my principal applied for the proceedings prior to the adjudication of bankruptcy (*i.e. the period, that has just been mentioned in the Translator's Note at the beginning of this point 2. In the Argentine law, this period is called "concurso preventivo de acreedores", literally meaning "a preventive agreement with creditors": what is sought is, indeed, to "prevent" that bankruptcy be*

 

*adjudicated. This meeting with creditors aimed at reaching a reorganization payment plan constitutes a case that is brought before a Commercial Court, as it will be explained right now, T's N.)* Said *(preventive agreement)* case has been brought before the National Lower Commercial Court # 20, Court Clerk's Office # 40. A lawfirm by the name of Suez, Pustilnik, Scheps y Asociados *(.. and Associates)* have been appointed as "síndico" *(Argentine legally specialized authors say that the only possible translation for this word is "trustee in bankruptcy"... even though it would be more appropriate to say "trustee in preventive agreement" T's N.).* ————————

Even though it has not be challenged in the present case, we shall proof that Supercanal Holding S.A. has not generated profits, at least since the opening of their preventive agreement meeting with creditors –and it seems difficult that Supercanal Holding S.A. be likely to generate profits in the fiscal years to come, if not only we take into account their going through the "preventive agreement period" but also if they are supposed to overcome the operative losses they have been enduring along their last fiscal years, detrimental indeed to their patrimony. ————————————

Thus, it has been absolutely proven that Supercanal Holding S.A. lack any taxpaying capacity inasmuch as they are not generating profits. In this connection, Alberto Tarsitano, an Argentine law specialized author, has written that a taxpaying capacity is / quote "...a taxpayer's aptitude to be subject to, precisely, taxpaying insofar as such aptitude is warranted by the presence of facts that disclose the existence of wealth (i.e. economic capacity) that, after those facts have been submitted to a legal valuation as well as reconciled with political, social, and economic aims, assume the rank of taxable category[5]" / unquote. ————————————

So, what is to be determined is whether or not the assumed, minimum income tax, as determined by the *(Argentine)* National Treasury on a company which is going through their "preventive agreement with creditors" period does affect Supercanal Holding S.A.'s taxable capacity –hence, is the income tax applicable or not? If we take into account the constitutional rank the taxable capacity principle has been endowed with[6], and if it can be proven that the assumed, minimum income tax affects

[5] Tarsitano, A. "El principio constitucional de capacidad contributiva" *(The constitutional principle of taxable capacity)* In "Estudios de Derecho Constitucional Tributario" *(Studies on Tax Law)*, Buenos Aires, Depalma, 1994, page 301.
[6] This is how the Argentine Supreme Court has acknowledged both the validity and efficaciousness of the taxable capacity principle (see final decisions #207:270, and #209:431) in the precedent "Navarro Viola de Herrera Vegas, Marta, Case" dated Dec 19, 1989 wherein it has been configurated the reach





that principle, it shall be deemed as unconstitutional, hence unapplicable to my principal's concrete case. ------------------------------------------------------------

The (*Argentine*) National Treasury's position with regard to this present case adheres to a doctrine-cum-jurisprudence posture sustaining that the assumed, minimum income tax is not a tax upon incomes: it is a tax upon capitals. From this standpoint, (*Argentine*) Act # 25063 should have set up a "juris et de jure" (*i.e. irrebutable, T's N.*) presumption in that sense that one percent of one's own properties has to be surrendered to the State, irrelevant of whatever is likely to happen. The only link to "the" Income Tax is that monies paid under the assumed, minimum income tax can be deducted. So is the (*Argentine*) National Treasury position. ------------------------------

Other specialized authors, however, have considered that the Minimum Income Tax is determined by taking assets as a basis –an addendum, so to speak to the traditional Income Tax (based on actual profits). In other words, assets do not constitute the taxable basis: they are only a basis for calculation. The logical conclusion therewith is that any debtor finding himself / herself within the "preventive agreement period" should not be submetted to taxation provided he / she can bring proofs against the tax authority' presumption. ------------------------------------------------------------

As a foundation to said posture –and beyond the message the (*Argentine*) Executive Branch had sent to the (*Argentine*) Congress together with the bill on the aforesaid Minimum Income Tax, it is our contention that analizing the lawmaker's intention, as it can be observed through congressional debates, is of an utmost interest. Indeed, during the congressional debates, the (*Argentine*) Representatives, Messrs. Alessandro, Balter, Dumon, Sebastian and Gutierrez on the one hand, and the (*Argentine*) Senator, Mr. Berhongaray on the other hand, most strongly impugned that "fresh" tax[7]. Even though the (*Argentine*) Senator, Mr. Cafiero, called the protest worded by the above mentioned Representatives and Senator "a quaint political line of argument", they nonetheless insisted on the fact that it was not only a way to exert a most excessive taxation on small and medium businesses but also a way to deepen

---

of said principle in the first paragraph of the eighth recital, ss/quote: the existence of either a wealth demostration or the taxable capacity is the indispensable requisite for any tax whatsover to be valid / unquote.
[7] See (titles have been translated for an easier reading) (*Argentine*) Parliament-related background, #2 on (*Argentine*) Act # 25063 on Tax Reform, La Ley, Buenos Aires, 1999.
By the by, obviously, calling the Assumed, Minimum Income Tax "a fresh tax" is a kind of pun we have adopted from the original, Spanish text the intention of which is making this translation easier for an English-speaking reader (T's N.)



the crisis any business within the "preventive agreement period" is facing, besides breaking the principle of (*taxpayers'*) taxable means. The only answer the (*Argentine*) Administration could put forward against the protest worded by the above mentioned Representatives and Senator was that the big, powerful corporations always tried and skipped paying the "traditional" Income tax, so this "fresh" tax secured that, at least, those corporations would have to pay something on their assumed, minimum earnings. Lawmakers replied with a more logical argument: the Administration cannot confess their incapacity to exert some control over corporations' tax evasion by punishing the small and medium businesses that, indeed, are good, honest taxpayers. -----------------------------------------------------------------------------------------------

In other words, the fact that the "fresh" tax is a way to complementing the "traditional" Income Tax, can be observed by just reading the "fresh" tax own text inasmuch as it does not take into account a subject's actual profits: on the contrary, the "fresh" tax text resorts to a parameter unrelated to said actual profits, namely: "a taxpayer's total assets" –that is to say: the "fresh" tax text presumes that a taxpayer owning a given number of assets is in a position to generating a given amount of profits likely to be taxable, so the "fresh" tax anticipates the payment of a tax (i.e. the "traditional" Income Tax) that would take place in due time. To make a long story short: the "fresh" tax assumes the (future) existence of a minimum profit in function of the importance of the assets owned by a given taxpayer. -------------------------------

The inter-relationship between the "traditional" Income Tax and the "fresh" one is not only based on the fact that both taxes consider the same taxable capacity of a given subject but also on the fact that –as can be read in Section 13 of the law ruling the "fresh" tax, it is clear that the "traditional" Income Tax has been determined for the same fiscal year the "fresh" tax should be also applied thus it could be computed as a payment on account. But there is more to this: let us suppose a case where the Income Tax amount paid by a taxpayer was not enough to pay off the amount due to the Assumed, Minimum Income Tax, so the amount paid for this last tax could be considered as a payment on account relevant to further fiscal years profits, provided that the due Income Tax was due for a fiscal year not exceeding the ten fiscal years immediately following the fiscal year the Assumed, Minimum Income Tax had been paid for. ----------------------------------------------------------------------------------



In other words, Section 13 of the "fresh" tax sets up a close correlation between the "traditional" Income Tax and the "fresh" one –and this could not be different insofar as the lawmaker, when creating both taxes, has taken into account to establish both taxable bases what we could call "the profit concept" as a manifestation of the taxable capacity of the subject involved, however, in one case, the lawmaker deals with a subject's actual earnings (the "traditional" Income Tax), on the second case the lawmakers only presumes the existence of such profits (the "fresh" Assumed, Minimum Income Tax) on the basis of the total of assets owned by subject involved.

In spite of the Assumed, Minimum Income Tax law being enacted, criticism has deepened: it has been said that this was an unnatural reform altering the structural essence of the direct taxes. It was also added that, in an very illogical way, the "fresh one" was reshuffling a old tax on assets that, many years ago, had been abolished on the basis that it fostered a manifest distorsion of companies' economy besides drifting apart from the people's actual taxable capacity. And criticism deepened even more when dealing with companies facing their "preventive agreement period": it has been said that the "fresh" tax was plain and simply absurd because a given company was supposed to keep paying taxes even though that company's liabilities were higher than their assets, which just means that they had no positive patrimony... --------------

For example, Ms Viviana C. Di Pietromica[8], a specialized author, considered that / quote "the income-producing capacity constitutes one among many evidences of a person's taxable capacity. As such, it is absolutely valid, for a lawmaker to select it and include it within the configuration of the so-called hypothesis on incidence of taxation. However, the question is: is it constitutionally valid to demand the collection of a tax that acknowledges, in its hypothesis on incidence of taxation, an assumed taxable capacity when –in a given concrete case, once the taxable fact has been checked up, said capacity does not exist? ---------------------------------

Even though a presumption cannot be identified with a fiction, whenever legal presumptions are absolute they appear to be quite close to legal fictions. --------------

The tax law displays different types of taxable capacity-related presumptions. So, the taxable capacity (in its capacity, so to speak, of a constitutional principle operating as a limit to the exertion of the State's tax power) seems to have been flexibilized when

---

[8] Di Pietromica V.C. "La capacidad contributiva presunta y la exigibilidad del impuesto" (*The assumed taxable capacity and the fact that taxes are exigible*) in Cuad Doct Jurisprud Tribut, Buenos Aires, IV (6/7): 251-67, 2001/2, Buenos Aires.



accepting this law technique-related mode. (Underlined ours). Now, once the presumption has been admitted within the nucleus of a tax incidence hypothesis, we have to find out whether such an admission is constitutionally valid when no rebutting proof is admitted, thus this admission becomes a fiction –i.e. a fiction creating an artificial reality. Even though doctrine accepts this type of presumptions, at the same time doctrine is agreeable to limiting the use thereof down to a possible minimum –if not, the principles of taxable capacity and equality would be harmed. When it comes to 'juris tantum' presumptions, the fact that offering proofs about the inexistence of a taxpayer's economic capacity is admitted, this moderates the dangerous possibility that a fictitious wealth demostration be subject to tax. Otherwise, such risk is on the increase whenever we are dealing with a 'juris et de jure' presumption that becomes a legal fiction" / unquote. (Underlining ours).

In a similar sense Diaz[9], on the one hand, and Lorenzo and Cavalli[10], on the other hand, express just the same. The latter say / quote: "A taxable fact is the assumed, minimum income determined on the basis of assets: it could be said that this is a tax "in waiting" so to speak, coexisting with the reality-based income tax. In other words: there exists an income based on actual, real incomes, and another one, complementary, based on an assumed income" / unquote. --------------------------------

Spisso[11], constructing a relationship with the taxable capacity principle, states / quote: "The economic capacity principle is violated whenever: 1. "jure et de jure" presumptions on a minimum income are established, without admitting any contrary proofs whatsoever; 2. Income presumptions are established in function, exclusively, of asset-related properties, without taking liabilities into account –which is, manifestly, irrational" / unquote. And Spisso follows on / quote: "The taxable capacity principle demands three requisites, namely: a) a tax is to be applied to net outputs; b) a total separation among the different taxable periods is not supposed to exist; c) fictitious outputs are not submitted to taxation. When the idea is measuring the economic capacity in function of a given patrimony, the rational way lies in

[9] Diaz, V.O. "Reflexiones sobre el verdadero alcance constitucional del impuesto a la ganancia mínima presunta. La obra del dislate jurídico" (*Some reflexions about the actual reach of the assumed, minimum income tax. In other words: about a judicial nonsense*). DTE, 229: 1061-75, 1999.
[10] Lorenzo, A., Cavalli, C.M. "Reforma tributaria: el impuesto a la ganancia mínima presunta" (*On tax reform: the assumed, minimum income tax*), DTE, 225: 704-, 1998.
[11] Spisso, R. "El principio de capacidad contributiva. Derechos y garantías del contribuyente desde la perspectiva constitucional" (*About the taxable capacity principle. Rights and guarantees of taxpayers from a constitutional standpoint*), DTE, 182: 1139 (*Date is missing, T's N.*)



calculating the whole net patrimony –that is, not only some asset-related properties, inasmuch as a tax must be imposed on available wealth". (Underlining ours). Of course, this requisite admits exceptions likely to respond to administrative good practices such as avoiding checking-up disproportionate costs –but, in this case those decisions must be subjet to a strict constitutional control, coupled to an adequate weighing of the judicial properties at stake. The third provision is related to the first one, namely: insofar as a taxpayer's taxable capacity is referred to an effective, actual, aptitude to pay a pax, it is necessary that actual economic aspects are subject to tax, and not, merely, fictitious possibilities. The absolute "juris et de jure" presumptions are totally unconstitutional inasmuch as accepting a determined economic wealth the existence of which has not been verified is a fact that harms the taxable capacity principle as well as the principle of law reasonability, because there is a lack of proportion between the pursued aim and the chosen mean to do so." / unquote. -------

In this context, we must conclude as follows: we can admit that a law which has established a tax to be applied on the assumed, minimum income could be in a position to presuming such taxable capacity, deriving it from the taxpayer's assets. However, when we are dealing with a company facing their "preventive agreement period", such a presumption cannot be "juris et de jure". -----------------------------------

In fact, the "preventive agreement period" like the one Supercanal Holding S.A. is facing is based on their suspension of payments –in other words, losses are presumed. Thus, it is unreasonable that legislation does not allow that a proof could be submitted against a presumption generated by another law which presumes the existence of profits. --------------------------------------------------------------------

Even though the tax should be calculated taking assets into account, assets do not constitute the taxable fact –if such were the situation, we could be entitled to presume that national lawmakers have, intentionally, failed to fulfill the (*Argentine*) Fiscal Federal Pact. ----------------------------------------------------------------

Thus, the Assumed, Minimum Income Tax is by no means appliable to the assets belonging to Supercanal Holding S.A. if we take into account the manifest lack of taxable capacity of my principal as regards the generation of profits. --------------------

Such a posture is supported by a strong jurisprudence. Let us take for example the "Georgalos Hnos S.A." case[12] which is similar to my principal's, brought before the

---

[12] "Caso Georgalos" (*The Georgalos Case*) DTE 231: 187-, 1999. Final decision # 000600.



(*Argentine*) National Court on Administrative Litigation on March 11, 1999: in that case the defendant's "amparo" (*an Argentine summary proceeding which serves to guarantee constitutional rights, T's N.*) was accepted, and the Title V, Section 6 of (*Argentine*) Act # 25063 was deemed to be unconstitutional inasmuch as / quote: "If the effective taxable capacity of the Georgalos Hnos company has not been respected, the guarantee of reasonability –which is supposed to existe while tax power is exerted, has not been fulfilled. Another fact claiming that such legal rule is simply exorbitant." / unquote. ----------------------------------------------------------------

We may add to this jurisprudence the final decision stated in case entitled "Hermitage S.A. vs. the (*Argentine*) Executive Branch (Department of Public Works) on Proceedings to decide a legal issue". In that case[13], plaintiff's financial difficulties could be ascertained through their balance sheets –hence their situation provided the basis so that not only the unconstitutionality of the tax was stated but also it was acknowledged that such tax could not be applied to that taxpayer. The majority vote of the aforesaid Court of Appeal stated / quote: "On the basis of the text at stake, there exists an actual presumption based on the existence of assets pertaining to the taxpayer. Anyhow there exists a marked disconnection between the taxable fact and the taxable basis, namely: liabilities –that are taken into account when it comes to ascertain the economic movement likely to generating profits (hence the taxability thereof), are omitted. In that sense, the inequity that has been resorted to is likely to harm the principles of equality, proportionality, and economic capacity that could establish an economic reality differing from the reality the law presumes. (…) In this connection, the (*Argentine*) Supreme Court has stated that "the existence of the manifestation of either wealth or taxable capacity, is indispensable as a validity request over any possible tax (SC final decisions 312:2467). (…) (*So, this Court of Appeal has decided that*) from the aforesaid report, it can be seen that, during the fiscal years 1995, 1996, and 1998 (*the company*) has registered losses –this company has faced both operative and tax-related losses that prevent any taxable action to be taken inasmuch as this could worsen the company's accounting and taxable capacity, a circumstance that is detrimental to the "assumed income" as seen in Point "d", folio 227). On the other hand, it can be seen that, during the last fiscal years, the company

---

[13] A final decision by the (*Argentine*) National Court of Appeal dealing with administrative legation, on February 13, 2002, docket # 23794/99.



could only earn profits apt at being subject to the Income Tax, as regards the fiscal year closed at October 31, 1994. Consequently, there is no doubt that the lack of taxable capacity is the strongest support against the tax authority'claim" / unquote.--

In that same sense, on September 8, 2002 the Federal Court of Appeal of the (*Argentine*) Province of Cordoba[14] has confirmed a decision taken by a federal judge, Ms Cristina G. de Lascano, dealing with the Assumed, Minimum Income Tax: Judge Lascano ruled against Decree # 1517/1998 that ordered a partial enactment of (*Argentine*) Act 2503. In that case, the Court of Appeal considered that the presumptions of the tax authority were insufficient: besides, the fact that a judge had ruled against the tax authority was a proof in favor of the taxpayer's taxable incapacity, even though, of course, said Court of Appeal did not express their criterion on the basis of the case at stake.------------------------------------------------

Finally, it seems to us that it is interesting to read about a case involving a transportation company - "Autotransportes Benjamin Matienzo S.A." and the (*Argentine*) Federal Administration for Public Revenue, where the Supreme Court of the (*Argentine*) Province of Mendoza dealt in-depth on the assumed, minimum profit when a company is facing their "preventive agreement period". There, the aforesaid Court ruled that the credit was partially admissible so, under condition, the Court admitted conditionally the credit over the assumed, minimum income tax, and reduced the interest rate sought. ----------------------------------------------------------

Hence, taking into account both the doctrine and jurisprudence, it could be concluded that, should Supercanal Holding S.A. have any type of income, they could use those monies as an anticipated payement on the Assumed, Minimum Income Tax as it is ruled in Section 13 of the relevant Act. ----------------------------------------------

In other words, if it is accepted that Supercanal Holding S.A. must pay the tax created under the Title V of (*Argentine*) Act # 25063, it could be understood that this company is to pay a tax based on the presumption that there exist monies that, really, do not exist –an absurdity that jeopardizes every possible principle of equity, proportionality and, fundamentally, the taxable capacity principle.----------------------

When considering my principal's case, the taxable capacity subject to the assumed, minimum income tax cannot be detected inasmuch as –on the basis of the tax returns

---

[14] "Palmar c/Estado Nacional" (*Case entitled Palmar vs. the (Argentine) National State. Unpublished. An abstract has been published in a journal by the title of Practica y Actualidad Tributaria (Tax News and Practice) (other data are missing, T's. N.)*



presented by my principal, tax returns that have not been objected by the tax authority, it can be seen that there is no profit whatsoever likely to be taxed upon, and, moreover, there is no possibility whatsoever that profits are generated, likely to entail the obligation, for my principal, to pay the relevant Income Tax.------------------

So, we are not facing any "profit presumption". Let us say that we are facing a fiction. A fiction wherein lawmakers do not admit any opposed proof, do want to tax an unexisting profit --a fiction, to say the least, that does not take into account the actual, real taxable capacity Supercanal Holding S.A. is evidently lacking. ----------------------

Finally, when it comes to the power of analyzing and ruling that the tax we are dealing herewith is unlikely to be applied --due to the fact that it violates the taxable capacity principle, we understand it is important to quote the irrefutable reasoning Alberto Tarsitano has worded in this connection / quote: "After we have analized the contents of the taxable capacity principle, we have to consider whether the Judiciary is able to control whether such a concept is likely to be adequated to the Tax Law -- that is, we have to elucidate whether either chosing the economy-related facts or the subjective valuation criteria sustained by the lawmaker when constructing the configuration of the taxable facts is justiciable a choice. Thereafter, we must elucidate whether judges are able to verify the aforesaid choice without invading the legal reserve realm. In this connection, there are two aspects that are not to be confused, namely: on the one hand, we have the decision referred to the choice of taxable wealth wherein, clearly enough, the lawmaker exerts on his reserve realm. From the perspective of (*Argentine*) jurisprudence, we could apply a whole "family" of final decisions made by our Supreme Court: all of them sustain that neither (a) the criterion dealing with the opportunity or good sense ruling the setting up of taxes, nor (b) an existing need for tax, nor (c) the weighing of the economic results submitted by taxpayers, are all and sundry unlikely to be judicially reviewed from a judicial standpoint (in this connection, see for example final decisions: 7:333; 114:262; 342:106).------------------------------------------------------

There exists, however, a very different question, namely: establishing a relationship between the fact which generates indeed both the obligation (*to pay taxes*), and the effective --I do insist: effective existence of an economic capacity the contents of the law supposes, but there is more to it: namely what is the proportion of the (*taxpayer's*) wealth which is supposed to be subject to tax?-------------------------------





That is the point wherein the legitimacy control that judges can exert does appear: this control constitutes an obligation inasmuch as –if we take as a basis the constitutional foundation for reasoning, a tax is unlikely to existe where (a) there is no taxable capacity whatsoever or (b) the tax exigence overcomes tolerability. So the questions lies in determining which is the extent of the aforesaid control. --------------

The justiciability of the point offers no doubt whatsoever: readers have only to grasp that –nothing more, nothing less, we are referring to a principle ruling whether taxation is rightful, a principle laden with strong ethical and juridical contents. In other words, being unaware of this principle also affects the civil rights that are common to the Law as a whole, such as the inviolability of property (Section 17 of the [Argentine] Constitution) and the absolute guaranty of reasonability (Section 33, ditto)" / unquote[15]. ---------------------------------------------------------------

Resuming, a tax is supposed to be established on the basis of a taxpayer's assumed profit... when said taxpayer has not generated any profit whatsoever. A tax is attempted at being imposed on a taxpayer with no taxable capacity whatsoever – moreover, a tax the magnitude of which depends on an Act the constitutionality of which is impugned... --------------------------------------------------------------

All that has been expressed until now is enough to state that the tax régime at stake is unappliable. Besides, as regards Supercanal Holding S.A., this tax is confiscatory.---

It should be observed that –as it is established in Section 1 of the Assumed, Minimum Income Tax Act, said tax must be paid over a 10-year term. Thus Supercanal Holding S.A. is to pay Argentine pesos 1,700,000.00 per fiscal year. In other words the amounts that the company would have to pay will cause the company to face what we could call a negative patrimony which, again, as regards Supercanal Holding S.A. demonstrates convincingly not only the total inexistence of any taxable capacity but also the confiscatory character of the tax at stake if applied to a company facing their "preventive agreement period". -------------------------------------------------------------

From all that has been explained until now, we can see that, accepting that the tax established by Title V of the (Argentine) Act # 25063 is likely to be applied to my principal, means that we are accepting a damage caused to (a) the principle of taxable capacity (Sections 16 and 33 of the [Argentine] Constitution; (b) the principle of inviolability of property (Section 17 ditto); (c) the principle of reasonability of laws

---

[15] Tarsitano, A. op cit., pages 337-8.



and statutes (Section 28 ditto); and (d) the principles of tax equality and tax proportionality (Section 16, ditto). ----------------------------------------------------

Thus, I hereby request that this requirement be accepted –hence I do request it is ruled that the tax created under Title V, Section 6 of the (*Argentine*) Act # 25063 is inapplicable to my principal, in doing so, Justice shall be done. ------------------------

----------------------------------------------------------------------------------------------------

**V. (*Argentine*) ACT 24769 – ABOUT A RESERVE.** In view of the considerations stated in the previous chapter, it can be seen clearly that the tax return submitted by Supercanal Holding S.A. is exact and in accord with the law. Consequently, my principal has not commited any offense whatsoever –hence, the reserve ruled by the (*Argentine*) National Treasury in the section 3 of the Treasury regulation that started the ex officio determination proceeding is not to be applied. --------------------------------

Even though we were to admit the existence of an omission with regard to the assumed, minimum income tax due for the fiscal year 2000, I state that the Treasury's interpretation, based on both jurisprudence and doctrine, evidence an excusable error –in other words there are no general grounds to suppose that my principal has indulged in a fraudulent or culpable attitude tending to committing either a crime or an infraction. ------------------------------------------------------------------------------

On the basis of all that has been explained, I do request that the (*Argentine*) Administrative Judge leave without effect the reserve Section 3 of the regulation impugned herewith, besides refraining for filing a summary proceeding tending to the application of administrative (*i.e. tax-oriented*) sanctions. At the same time, my principal reserve their right to widen these considerations at the opportune procedural moment as well as during the relevant proceeding. ------------------------------------------

**VI. PROOF. A. Matter precedent. Offering of a new proof. About Section 166 of Law 11.683 (1998).** Before offering of proof, it is our contention that some considerations should be worded as regards the impediment set up in Section 166 of (*Argentine*) Law 11683 (1998) pursuant to a reform introduced by (*Argentine*) Act # 25239. ------------------------------------------------------------------------------------------

Said tax curtails my principal's right of self-defense by limitating, through the motions (exceptions) appearing in the aforesaid Section 166, our offering either new proofs or proofs differing from the proofs that had been previously submitted to the





(*Argentine*) Federal Administration for Public Revenue –AFIP, as their Spanish acronym.----------------------------------------------------------------------------------------

In the case at stake, we kindly request Your Honor to accept the new accounting proof submitted inasmuch as the fact-related circumstances of the aforesaid case are included within the admissibility bases for a new proof. ----------------------------------

Indeed, the whole proof is needed so that Your Honor may arrive, later on, to a conclusion regarding (a) my principal's manifest lack of taxable capacity, on the one hand and (b) on the other hand, as a consequence, that it is not possible to impose this tax on my principal. -----------------------------------------------------------------------

This is why, keeping in mind the legal imperative likely to rule at an (*Argentine*) Administrative Treasury Court, I do request this Court that either (a) the offered proof is admitted or (b) otherwise, actions are taken by this Court to clarify additional evidence, so that the objective truth the proceeding issued by AFIP lacks indeed is sought for.---------------------------------------------------------------------------------

It should be noted that the (*Argentine*) Treasury Court has admitten the offering of a new evidence when it comes to dealing with ex officio rulings when an appeal is filed. In fact, the court file 20121-1 titled "Supercanal S.A. on a VAT ex officio determination", Court "B" of said Court solved the opposition submitted by the (*Argentine*) Treasury against the evidence offered by my principal, thus admitting that complete evidence.-----------------------------------------------------------------------

Finally, in the hypothetical case of Your Honor rejecting the admissibility of the offered proof, I do request Your Honor to declare the unconstituonality of the (*Argentine*) Act # 25239 insofar as said Act has reformed the second paragraph of Section 166 of the (*Argentine*) Act # 11683 (1998) thus affecting my principal's right to defense at trial pursuant to due process (guaranteed by Section 18 of the [*Argentine*] Constitution). Indeed, as it has been seen previously, this evidence is essential to justify the arguments Supercanal Holding S.A. has sumitted in this appeal, arguments that could not be wholly and fully expressed during the ex officio determination-related proceeding before the Province of Mendoza Area of AFIP. This is why the non-admission of the said proof shall hinder the possibility that the facts claimed in my principal's motion for appeal be sustained –hence, defense shall remain absolutely inefficient, thus leaving these proceedings without the objective truth likely to contribute to the reasonable, lawful solution of the case at hand.---------------

29



**B. Offering evidence.** Even though there do not exist controverted facts in the case at hand, should, hypothetically speaking, the representative of the (*Argentine*) National Treasury disclaim the facts presented in Chapter III of this document, the following evidence is offered. ------------------------------------------------------------------------

------------------------------------------------------------------------

**1. With regard to the possesions of Supercanal Holding S.A.** ------------------------

- A balance sheet from Supercanal Holding S.A. for the fiscal year closed on December 31, 1999. ------------------------------------------------------------------------

- Tax returns related to the Assumed, Minimum Income Tax of Supercanal Holding S.A. for fiscal years dating back to 1998 up to now. ------------------------------------

It should be noted that the abovementioned proof had already been submitted in the case entitled "Taxpayer Supercanal S.A., CUIT (*The Spanish acronym for "Taxpayer Registration Number", T's N.*) # 30-61118252-6, Income Tax, Reorganization, Motion for Appeal. Section 74 of the (*Argentine*) Decree 1397/79" to which we refer on the basis of judicial economy. ------------------------------------------------------------

------------------------------------------------------------------------

**2. With regard to the possesions of Tescorp, Inc., and the merger between Tescorp, Inc. and Tescorp Acquisition.** ----------------------------------------------

Inasmuch as both companies, Tescorp, Inc., and Tescorp Acquisition have been created and organized abroad, the proof of both companies' possessions, as well as the merger between both must be sought for abroad. In this sense, with respect of an evidence that is to be sought for in a foreign country, we have to resort to Sections 369 to 374 from Argentina's Code of Civil and Commercial Procedure. Those norms are appliable to this administrative and tax proceeding by means of the dispositions appearing on Section 106 of (*Argentine*) Decree 1759/72 (the implementing regulation of the (*Argentine*) Act on administrative proceedings, and Section 116 of (*Argentine*) Act # 11683 (1998). ------------------------------------------------------------

This is why we are willing to comply with the requisites needed for producing evidences in foreign countries, as indicated in Sections 369 and 370 of the above mentioned Argentina's Code of Civil and Commercial Procedure. ------------------------

So, with respect to the requisite related to the evidence of our present case we are trying to prove: (a) Tescorp, Inc.'s possessions in Argentine companies, and the merger by which Tescorp, Inc. absorbed Tescorp Acquisition, Corp. Both companies





form part of the chain of shareholders' possessions, and they are the indirect owners of the continuing company –i.e. Supercanal S.A. ---------------------------------------------

So, the evidence related to those facts is essential in the case at stake inasmuch as we are aiming at checking up all the links in the chain of shareholders and their possessions. -----------------------------------------------------------------------------------

In that sense, regarding the means of proof to be submitted, we must sent written communications –i.e. Diplomatic Letters Rogatory, to the Secretaries of State of the State of Texas and the State of Delaware in the United States of America –where Tescorp, Inc, and Tescorp Acquisition, Corp. are organized, respectively, so that they inform as follows: (i) about the shareholders of each company, before and after the full merger; (ii) when, and how, did the full merger took place between Tescorp, Inc. (the absorbing company) and Tescorp Acquisition, Corp. (the absorbed company); (iii) what are the assets of Tescorp, Inc.----------------------------------------------------

We are also adding an authenticated translation of the pertinent part of the Offering Memorandum wherein the acquisition and merger project of Tescorp, Inc. is resumed. It could be noted that this Offering Memorandum is a certified document in the United States of America so, as such, it has been used by investors as a truthful instrument so that a credit could be awarded to the Group organized by Supercanal Holding S.A.. In other words, the credibility of said document and the contents thereof for investors involved supports the truthfulness of my principal's affirmations in this brief. ------------------------------------------------------------------------------

A similar importance must be awarded to documents dealing with the economic reality of the operation at stake, namely the notes appearing in the balance sheets for the fiscal years 1996, 1997, and 1998 (see Note 6 in balance sheets), that give an account of the acquisition process conducted by Tescorp, Inc., as well as the aim of the said acquisition –that is, purchasing companies in Argentina. It should be noted that those balance sheets had been performed and audited by top accounting firms enjoying a national and international reputation –a fact that contributes also to supporting the truthfulness of what is stated herewith.-----------------------------------

Resuming, all those evidences indeed give credit to the truthfulness of our explanations. --------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------





**3. With respect to the legal entitlement of Tescorp Acquisition, Corp., in Austral Communications, Corp.** ----------------------------------------------------------

Inasmuch as (a) this company relationship is another link within the reorganization chain, and (b) both companies are organized into the State of Texas, of the United States of America, the production of evidence to be sent abroad –i.e. to Argentina, is indispensable. ----------------------------------------------------------

So, due to the same foundations expressed in the previous point, the controversial fact –that is, the relationship between both companies, shall be proven through written communications to the Secretary of State of the State of the Texas, so that they inform as follows: (i) which is the society that Tescorp, Inc. exerts control on. (ii) the name of the shareholder(s) of Austral Communications, Corp; (iii) when did happen or are happening the facts requested in both paragraphs (i) and (ii) above. ------------

----------------------------------------------------------

**4. With regard to the legal entitlement of Austral Communication, Corp. in Comunicaciones Austral S.A.** In due time, the evidence was presented that Austral Communications, Corp. was shareholder of Comunicaciones Austral S.A.: those evidences were:----------------------------------------------------------

- The shareholders record of Comunicaciones Austral S.A. where the participation of Austral Communications, Corp. since December 31, 1995 can be observed.------------

- Tax returns submitted within the frame of reference of the (*Argentine*) Regulation # ███████

The aforesaid evidence was submitted in case entitled "Taxpayer Supercanal S.A., CUIT (*The Spanish acronym for "Taxpayer Registration Number", T's N.*) # ████ ███████ Income Tax, Reorganization, Motion for Appeal. Section 74 of the (*Argentine*) Decree 1397/79" to which we refer on the basis of judicial economy.-----

----------------------------------------------------------

**5. With regard to the legal entitlement of Austral Communication, Corp. in Supercanal S.A. and other operative companies.** In due time, the following evidence was presented: ----------------------------------------------------------

- Shareholders records of both Supercanal S.A. and the operative companies.---------

- Presentation of the abovementioned Regulation # 4120 concerning the aforesaid companies for the fiscal year 2000. ----------------------------------------------------------




Said evidence was submitted in case entitled "Taxpayer Supercanal S.A., CUIT (*The Spanish acronym for "Taxpayer Registration Number", T's N.*) # ███████ Income Tax, Reorganization, Motion for Appeal. Section 74 of the (*Argentine*) Decree 1397/79" to which we refer on the basis of judicial economy.---------------

6. **An expert on accounting's appraisal.** Mr. Gabriel de Alvaladejo is proposed as an expert on accounting. Mr. de Alvaladejo, is a Certified Public Accountant, registered on the Association of CPA's of the city of Buenos Aires (data registered under –*Argentine style,* █████████. His address is (*written Argentine style*) ████████████████████ number ███████ so that, jointly with an expert on accounting appointed ty the (*Argentine*) National Treasury, after they have checked up the books and registers belonging to Supercanal Holding S.A. they are in a position to:-----------------------

(i) issuing a decision in the sense that said books and records are kept pursuant to the law. ---------------------------------------------------------------------

(ii) individualizing, and evaluating Supercanal Holding S.A. shareholder participation in other companies.-------------------------------------------------------

(iii) itemizing losses accumulated by Supercanal Holding S.A. between fiscal year 1999 and fiscal year 2004. -------------------------------------------------

(iv) itemizing profits generated by Supercanal Holding S.A. between fiscal year 1999 and fiscal year 2004. --------------------------------------------------

(v) submitting every other possible data they consider to be of interest in this case.----

-----------------------------------------------------------------------

**VII. SUSTAINING THE RESERVATION FOR RAISING A FEDERAL QUESTION.** I do sustain that an (*Argentine*) Federal Question could be raised as well as I sustain the possibility to file in good and proper time and form before the (*Argentine*) Supreme Court, if necessary, an extraordinary appeal, as authorized by Section 14 of (*Argentine*) Act # 48, and Section 6 of (*Argentine*) Act # 4055 on the grounds that guaranties appearing in the following Sections of the (*Argentine*) Constitutions have been put in jeopardy, namely: Section 17 (which establishes that (a) the inviolability of property, and (b) nobody can be deprived of his/her property unless a lawful final decision has been issued); Section 18 (which assures the due




process, as well as right to defense at trial pursuant to due process); Section 31, and the Subsection 22 of Section 17 (which establish that international treaties are hierarchically superior to (*Argentine*) national laws). ------------------------------------

----------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------

**VIII. AUTHORIZATIONS.** I do authorize indistinctly the following professionals (*Just in case, let us clarify once more that, in Spanish-speaking countries, all and every people who have taken their university degrees at a school of law are awarded the title of Doctor –i.e. "Judicial Doctor", T's N.*) so that they either enter an appearance in the case, remove documents from records, serve notices, judicial orders, official letters, etc., and engage in any other needed activity, namely: Dr. Eduardo M. Vila and/or Dr. Raul Luque, and/or Dr. Alberto Gromnicki (DNI *–this is the acronym of the official ID in Argentina: Documento Nacional de Identidad [National ID]*) ██████, Dr. Cesar G. Meli ███████████, Dr. Lia S. Protto (Ms) ██████████, Dr. Alberto E. Malaver (███████████, Dr. Maria F. Giannini (Ms)██████████Dr. Victoria L. Denari (Ms)█████████, Dr. Adrian M. Nardini ██████████ Dr. Agustin Perez-Acquisto██████████, Dr. Christian Dufour ██████████Dr. Maria C. Balestrini (Ms)██████████ and Dr. Maria T. Aguero (Ms)██████████------------------------------------------

----------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------

**IX. PETITION.** In view of the above submitted evidence, I do request as follows: --

1. That Your Honor accept the aforesaid motion for appeal against the ruling that has been issued in this case as presented in good and proper time and form. --------------------

2. That Your Honor accept the evidence herewith.-------------------------------------------

3. That Your Honor accept that the reservation for raising a federal case has been submitted.-----------------------------------------------------------------------------------

4. That Your Honor take into account the authorizations that have been granted. --------

5. That, finally, Your Honor revoke the punishment that has been applied, order the present writings to be filed with costs to the (*Argentine*) National Treasury. ------------

In doing so, Justice shall be done. There appears an illegible signature and a rubber stamp reading Carlos-Hernan Morales, an attorney at law, with Dr. Morales'




professional certifications. Below, a rubber stamp reads: Received at the Court Clerk's Office on May 31, 2005 at 1:58 PM.------------------------------------

----------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------

I, Francisca-Juana Martins de Souza, of the city of Buenos Aires, a sworn translator, duly admitted, qualified and sworn in the Public Translators' Association of the city of Buenos Aires, do hereby certify the foregoing to be a true and accurate translation of the photocopy of Diplomatic Letters Rogatory written in the Spanish language hereunto attached. IN WITNESS WHEREOF, I have hereunto set my hand and official seal in Buenos Aires, on the seventeenth day of June, year two thousand six.- As requested by the abovementioned Translators' Association, the foregoing formula is to be back translated into the Spanish language. -----------------------------------

ES TRADUCCION FIEL al idioma inglés de la fotocopia del adjunto documento Exhorto, redactado en idioma nacional, que he tenido ante mi vista y al que me remito a todos sus efectos y que firmo y sello en mi carácter de Traductora Pública en idioma inglés, en Buenos Aires, el día diecisiete de junio de dos mil seis. --------------

COLEGIO DE TRADUCTORES PUBLICOS
DE LA CIUDAD DE BUENOS AIRES
Corresponde a la Legalización

Nº T6- 6095 b6

FABIANA C. POMILIO

FRANCISCA JUANA MARTINS DE SOUZA
TRADUCTORA PUBLICA
FRANCES MAT. PROF. Tº IX Fº 011
INGLES MAT. PROF. Tº X Fº 160
CAPITAL FEDERAL 2134



TRADUCCIÓN PUBLICA ------------------------------------------------------------

**TRANSLATION** ----------------------------------------------------------------

**DIPLOMATIC LETTERS ROGATORY** --------------------------------------------

<u>Court involved</u>: Tribunal Fiscal de la Nación (*Argentina's Treasury Court, Translator's Note*) -------------------------------------------------------------

<u>Court of Appeal</u>: Court "C". --------------------------------------------------

<u>Chamber</u>: Eighth Chamber. --------------------------------------------------

<u>Judge in charge of Chamber</u>: Hon. Judge Adriana Adorno (Ms) ----------------------

<u>Court Clerk</u>: Adriana Capria (Ms).-----------------------------------------------

<u>Case number</u>: Twenty-five thousand four hundred fifty-eight / hyphen / I (*a Roman numeral, T's N.*). -------------------------------------------------------------

<u>Case entitled</u>: Supercanal Holding S.A. (*S.A. is the Spanish acronym for "sociedad anónima" a type of company quite similar to the American "Co., Inc." type of business. T's N.*) on Appeal. -----------------------------------------------------

<u>Nature of cause</u>: An ex officio determination.---------------------------------------

<u>Jurisdiction</u>: Jurisdiction over the subject matter of the case. -----------------------

<u>Plaintiff</u>: Supercanal Holding S.A. ---------------------------------------------

<u>Plaintiff's Registered Domicile</u>: (*Street address is written Argentine style*) Reconquista 672, Piso 10° (*10th floor*), Ciudad de Buenos Aires, República Argentina. (*Between brackets, it is clarified that this is the address of a law firm by the firm name of Estudio Jurídico Archimbal, Vison, Carcavallo, Vila y Asoc. –i.e. Archimbal, Vison, Carcavallo, Vila & Associates Law Office, T's N.*)------------------------------

<u>Defendant</u>: Dirección General Impositiva / Administración Federal de Ingresos Públicos (*The first name –lit. General Revenue Office, is no longer in use, even though its Spanish acronym, DGI, is likely to be seen in some documents. The second, more recent name –lit. The Federal Administration for Public Revenue, is now in force. For an easier reading, we have chosen its Spanish acronym, AFIP, in this translation, T's N.*) -----------------------------------------------------------

<u>Defendant's Registered Domicile</u>: (*Street address is written Argentine style*) Defensa 192, entrepiso C (*mezzanine "C"*), Departamento Contencioso Judicial (*Administrative Litigation Area*), Ciudad de Buenos Aires, República Argentina. ----

**The Hon. Judge Adriana Adorno (Ms), in charge of the Eighth Chamber of the Court of Appeal "C", of the Argentina's Treasury Court, located on (*Street***



*address is written Argentine style)* Avenida Julio Argentino Roca 671, 7° piso (*7th floor*), Ciudad de Buenos Aires, República Argentina, presents greetings to the Hon. Competent Judge in charge of receiving and processing requests for jurisdictional assistance at the Department of State of the State of Delaware, United States of America, and respectfully requests his/her assistance in connection with the following matter:------------------------------------------------

Case number 25458-I entitled "Supercanal Holding S.A. on Appeal" have been brought to the Argentine Treasury Court, Eighth Chamber of the Court of Appeal "C". In this case, there appears a regulation, the pertinent part of which reads in the pertinent part thereof / quote: In the city of Buenos Aires, on the third day of February, year two thousand six, [whereas…, now therefore…] It has been approved that an additional information pertaining to third parties, offered by Plaintiff, be requested by means of diplomatic letters rogatory. Plaintiff's request appears on Case folio 33 and reverse thereof. So, needed information shall be requested to the Departments of State of the State of Texas and the State of Delaware pursuant to terms expressed on the aforesaid folio 33 and reverse thereof, pursuant to both Section 132 of the Argentine Code of Civil and Commercial Procedure, and Section 38, Subsection 2 of the (*Argentine*) National Justice Regulation. Plaintiff shall be in charge of both producing and serving these letters rogatory, that shall have to be signed by Plaintiff, and, this, within the fifth working day after these presents have been submitted. Signed: Agustin Torres, Judge . -------------------------------------------

Pursuant to the foregoing, on the basis of evidence connected to Civil and Commercial Matters, we respectfully request the assistance and full compliance of the Department of State of the State of Delaware, while we offer to reciprocate in any similar case. ----------------------------------------------------------------------------

Information requested deals with the following points: ------------------------------------

1) With regard to a merger between the following corporations, namely **Tescorp, Inc.**, domiciled in the State of Texas, and **Tescorp Acquisition Corporation**, domiciled in the State of Delaware: -------------------------------------------------------------

(i) A list of Tescorp, Inc. shareholders, i.e. shareholders before and after the merger had taken place; and a list of Tescorp Acquisition Corporation shareholders, i.e. shareholders before and after the merger had taken place, ----



**(ii) a) When did the merger take place –that is a "full" merger, not a consolidation and merger, being Tescorp, Inc. the acquiring company, and being Tescorp Acquisition Corporation the absorbed company; b) How was the merger performed –tems and conditions thereof.-------------------------------------**

**(iii) What are the assets of Tescorp, Inc. --------------------------------------------------**

It should be noted that this Court is legally qualified to have jurisdiction over this present case, pursuant to the regulation currently in force in the Argentine Republic, namely Act # 11683, Code of Civil and Commercial Procedure, 1998.----------------

*(Just in case, let us clarify that, in Spanish-speaking countries, all and every people who have taken their university degrees at a school of law are awarded the title of Doctor –i.e. "Judicial Doctor", T's N.)* **Dr. Christian Dufour and/or Dr. Melina San Andres (Ms)** have been authorized to deal with the service of notice of these Letters Rogatory, with a wide scope of powers to delegate and subrogate as needed.

It is to be noted that, inasmuch as a decision has been made to require evidence abroad, the Interamerican Convention on Collection of Evidence in Foreign Countries –approved by the Ist Interamerican Conference on International Private Law (Panama, Jan. 30 / 19975) is appropriate in this case, thus we submit herewith the particulars of the parties involved as well as an abstract of the cause.------------------

A full copy of the lawsuit is attached hereto. -------------------------------------------------

Domiciles of the parties involved and their legal representatives shall be detailed below *(Again, addresses shall be written Argentine Style, T's N)* and, now a short overview of the case is submitted hereto. -------------------------------------------------

This is a cause of an administrative nature that has been brought before the above mentioned Court. Supercanal Holding S.A. appealed against an administrative regulations issued by the Argentine National Treasury inasmuch as AFIP has determined ex officio the amount the appellant was supposed to pay on account of the minimum, assumed income tax amount covering year two thousand. ------------------

The sum in dispute amounts to Argentine pesos nine hundred ninety-eight thousand five hundred seventy-seven with ninenety eight cents. (*$ 998,577.98 –just in case, the Argentine monetary unit [peso] is written "$" just as the US dollar, this for time-honored, historic reasons, T's N.*) and, in addition, interests, penalties, and other costs. Supercanal Holding S.A. are against the ex officio determination issued by the Argentine National Treasury inasmuch as Supercanal Holding S.A. do not know how



the Argentine National Treasury could compute, within Supercanal Holding S.A.'s patrimony –this, from a tax paying point of view, the shareholder participations from companies located abroad that, in turn are shareholders in companies located in the Argentine Republic.

a) The apppellant is a company by the firm name of Supercanal Holding S.A.; with street address: Avenida Paseo Colon 505, city of Buenos Aires, Argentina. Legal representative: Dr. Carlos H. Morales, with street address: Reconquista 672, piso 10°, city of Buenos Aires, Argentina.---------------------------------------------------------------

Domiciles of parties and attorneys-at-law involved are as follows: ---------------------

b) Defendant: Administracion General de Ingresos Publicos –AFIP, with street address: Defensa 192, Entrepiso "C", Depto Contencioso Judicial, city of Buenos Aires, Argentina. Legal representative: Dr. Lucas Garcia-Araoz, who is also legally domiciled at AFIP. ------------------------------------------------------------------------------



The present evidence measure has been requested by the appellant who shall take care of expenses involved. Their request shall be performed by means of the Argentine State Department through their authorized officials.--------------------------------------

**In this connection** I kindly request full compliance, and offer to reciprocate in any similar case. **Consigned, stamped, and signed** in my office, in the city of Buenos Aires, Argentina, on the twenty-fifth day of April, year two thousand six. There appears an illegible signature, and a rubber stamp reading Adriana Adorno, Judge. --

**Signature authentication**: In accordance to the law, I, the undersigned, certifies that the foregoing signature pertains to Dr. Adriana-Beatriz Adorno (Ms), Judge in charge of the Eighth ·Chamber of the Argentina Treasury Court. Dr. Adorno has been appointed by means of Decree # 472/06 issued by the Argentine Executive Branch, dated on the nineteenth day of April, year two thousand six, and Dr. Torres keeps being in office at present, I attest. Buenos Aires, the twelfth day of March,year two thousand seven.. There appears an illegible signature and a rubber stamp reading Dr.

Jose-Carlos Megasini, Administrative Secretary General, Argentina Treasury Court.-

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

I, Francisca-Juana Martins de Souza, of the city of Buenos Aires, a sworn translator, duly admitted, qualified and sworn in the Public Translators' Association of the city of Buenos Aires, do hereby certify the foregoing to be a true and accurate translation into the English language of the original document –Diplomatic Letters Rogatory- written in the Spanish language hereunto attached. IN WITNESS WHEREOF, I have hereunto set my hand and official seal in Buenos Aires, on the seventh day of May, year two thousand seven.- As requested by the above mentioned Translator's Association, the foregoing formula is to be back translated into the Spanish language.

-------------------------------------------------------------------------------------------------

ES TRADUCCION FIEL al idioma inglés del adjunto documento original –Exhorto Diplomático- redactado en idioma nacional, que he tenido ante mi vista y al que me remito a todos sus efectos, y que firmo y sello en mi carácter de Traductora Pública en idioma inglés, en Buenos Aires, el siete de mayo de dos mil siete. ------------------

FRANCISCA JUANA MARTINS DE SOUZA
TRADUCTORA PUBLICA
FRANCES MAT. PROF. Tº IX Fº 011
INGLES MAT. PROF. Tº X Fº 180
CAPITAL FEDERAL 2134

COLEGIO DE TRADUCTORES PUBLICOS
DE LA CIUDAD DE BUENOS AIRES
Corresponde a la Legalización
Nº Tº - 27200

FABIANA O. POMILIO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST     )
FROM ARGENTINA             )
IN THE MATTER OF         )   Misc No. 07-
SUPERCANAL HOLDING S.A.   )

<u>ORDER</u>

       Upon application of the United States of America; and upon examination of a letter of request from Argentina whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Argentina and the Court being fully informed in the premises, it is hereby

       **ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Argentine authorities as follows:

       1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

       2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party

shall be required);

      3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Argentina, which procedures may be specified in the request or provided by the Argentine authorities;

      4. seek such further orders of this Court as may be necessary to execute this request; and

      5. certify and submit the evidence collected to the Office of International Affairs, Civil Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Argentine authorities.

      IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

      Dated: This _____ day of _____, 2007.

 

 

_____
United States District Court Judge